IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIE J. WATSON,
      Petitioner,

vs.                            Case No. 4:08cv428/SPM/EMT

EDWIN G. BUSS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 24). Respondent filed an answer and relevant portions of the state court record (Doc. 40). Petitioner filed a reply and supplemental authority (Docs. 45, 50, 52, 55).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 40, Exhibits).[2]  Petitioner was charged by a third amended information filed in the Circuit Court in and for Leon County, Florida, with three counts of sexual battery on a physically incapacitated person (Counts I–III), one count of burglary of an occupied dwelling with assault or battery (Count IV), one count of felony battery (great bodily harm) (Count V), and one count of criminal mischief (Count VI) (Ex. A).  The offense conduct occurred on April 6 or 7, 2005 (*id.*).  Following a jury trial on February 2–3, 2006 (Ex. B), Petitioner was convicted as charged on all counts (Ex. C).  He was sentenced to three (3) concurrent terms of thirty (30) years of imprisonment on Counts I–III; life in prison on Count IV, to run consecutively to the sentence on Count I; five (5) years in prison on Count V, to run concurrently with the sentence on Count I (with pre-sentence credit of 334 days on Counts I–V); and sixty (60) days in jail on Count VI (with pre-sentence credit of sixty (60) days) (Exs. D, E).  He was adjudicated a prison releasee reoffender as to Counts I–V and sentenced to serve 100 percent of his sentences on those Counts, pursuant to Florida Statutes § 775.082(8)(b) (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-1381.  Petitioner's counsel initially filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. F).  Petitioner filed a motion to strike the Anders brief and appoint new counsel (Ex. G).  The First DCA granted Petitioner thirty (30) days to file a pro se initial brief (Ex. H).  Petitioner's counsel then filed an amended initial brief setting forth one issue for appeal (Ex. I).  On April 11, 2007, the First DCA affirmed the judgment per curiam without written opinion (Ex. L).  Watson v. State, 954 So. 2d 1163 (Fla. 1st DCA 2007) (Table).  Petitioner did not seek further review.

On May 16, 2007, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M).  While that motion was pending, he filed

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 40).  If a cited page has more than one page number, the court cites to the page number that appears in the lower right corner.

a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. O). On September 10, 2007, the state circuit court summarily denied Petitioner's motions in separate written opinions (Exs. N, P). Petitioner appealed both decisions to the First DCA, Case No. 1D07-5090 (Ex. Q). On February 19, 2008 the First DCA affirmed both decisions per curiam, with the mandate issuing March 20, 2008 (Exs. S, V). Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008).

On January 29, 2008, Petitioner filed a habeas petition in the First DCA alleging ineffective assistance of appellate counsel, Case No. 1D08-0541 (Ex. W). The First DCA denied the petition per curiam without written opinion on March 14, 2008 (Ex. X). Watson v. State, 977 So. 2d 585 (Fla. 1st DCA 2008) (Table). Petitioner sought certiorari review of both First DCA decisions (the decision affirming the denial of his Rule 3.850 motion and the decision denying his habeas petition) in the Florida Supreme Court (Ex. Y). On April 2, 2008, the Florida Supreme Court, Case No. SC08-626, dismissed for lack of jurisdiction Petitioner's petition for review of the decision affirming the denial of his Rule 3.850 motion. Watson v. State, 980 So. 2d 1071 (Fla. 2008) (Table). On May 27, 2008, the Florida Supreme Court, Case No. SC08-627, dismissed as untimely Petitioner's petition for review of the denial of his habeas petition (Ex. FF) and denied Petitioner's motion for rehearing or reinstatement on August 28, 2008 (Exs. GG, HH). Watson v. State, 987 So. 2d 1211 (Fla. 2008) (Table).

On July 10, 2008, Petitioner filed a second Rule 3.850 motion in the state circuit court (Ex. II). The court summarily denied the motion on July 30, 2008 (Ex. JJ). The same day, July 30, 2008, Petitioner filed an amended motion (Ex. KK). The state circuit court denied the amended motion on August 6, 2008 (Ex. LL). Petitioner appealed both decisions to the First DCA, Case No. 1D08-4218 (Ex. MM). On December 29, 2008, the First DCA affirmed the decisions per curiam without written opinion, with the mandate issuing March 4, 2009 (Ex. RR). Watson v. State, 3 So. 3d 324 (Fla. 1st DCA 2009) (Table). Petitioner sought certiorari review in the Florida Supreme Court, Case

No. SC09-375, but the court dismissed the petition for lack of jurisdiction on March 26, 2009.

Watson v. State, 7 So. 3d 1099 (Fla. 2009) (Table).[3]

Petitioner filed the instant federal habeas action on September 22, 2008 (Doc. 1). Respondent concedes that the petition is timely (Doc. 40 at 8).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

---

[3] Petitioner apparently filed two more post-conviction applications after he filed his federal habeas petition. He filed a second Rule 3.800 motion in the state circuit court, which the court denied; the decision was affirmed on appeal, Case No. 1D09-3664, on October 22, 2009, with the mandate issuing November 17, 2009. *See* Watson v. State, 22 So. 3d 75 (Fla. 1st DCA 2009) (Table).  He additionally filed a third Rule 3.850 motion in the state circuit court, which the court denied; the decision was affirmed on appeal, Case No. 1D10-1909, on October 4, 2010, with the mandate issuing December 30, 2010. *See* Watson v. State, 49 So. 3d 751 (Fla. 1st DCA 2010) (Table).  Petitioner filed a petition for review of the First DCA's decision in the Florida Supreme Court, but the court dismissed it for lack of jurisdiction. *See* Watson v. State, No. SC10-79, 2011 WL 148863, at *1 (Fla. 2011).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[4] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* <u>Gill</u>, supra at *17 (citing <u>Harrington</u>, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that

the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at * 18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S.

---

[5]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
                (A)  the applicant has exhausted the remedies available in the courts of the State; or
                (B) (i)  there is an absence of available State corrective process; or
                        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's

claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[7]

---

[6] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[7] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); accord Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), rev'd on other grounds, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's

procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[8] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808

---

[8] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

(1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

> Within this framework, the court will review Petitioner's claims.

## IV.     PETITIONER'S CLAIMS

A.      Ground One:  "The information alleged false testimony and was not properly sworn to by material witness."

Ground Two:   "Trial court was without jurisdiction to impose sentence and judgement [sic]."

Claim 12:[9]  "The petitioner Watson contend [sic] that he was denied effective assistance of trial counsel when counsel misinterpretation [sic] that the Tallahassee police department offense report to be a written sworn affidavit, which was not under a proper oath as required by Rule 3.140(g)."

Claim 13: "The petitioner Watson contend [sic] that trial court error [sic] in denying . . . Rule 3.850 postconviction motion [on] this claim when . . . court misinterpretated [sic] the Tallahassee police officer investigation report probable cause [sic] to be a valid sworn affidavit by the material witness."

Petitioner states the prosecutor falsely alleged in the third amended information that she had received sworn testimony from the material witness (the victim, Ms. Carol O'Connor) (Doc. 24 at 4, 13–14).[10]  The prosecutor, however, never obtained a sworn affidavit from Ms. O'Connor and instead relied upon the probable cause affidavit of an investigating officer, who was not a material witness (id.).  Petitioner contends this deprived the trial court of jurisdiction to convict and sentence him (id.).  In a related claim, Petitioner asserts trial counsel was ineffective for failing to object to

---

[9] The court is using Petitioner's identification system for his claims—he identifies his first four claims as Grounds One through Four (see Doc. 24 at 4–5) and his subsequent thirty-three claims as Claims 1–33 (id. at 7–28).

[10] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

the charging document or seek its dismissal on this ground (*id.* at 13–14). Petitioner states he raised these claims in his Rule 3.850 and Rule 3.800 motions (*id.* at 4–5). He contends the post-conviction court erroneously determined that the investigating officer's probable cause affidavit was sufficient to satisfy Rule 3.140(g) of the Florida Rules of Criminal Procedure (*id.* at 14).

Respondent asserts Petitioner raised these claims in his first Rule 3.850 motion and his appeal of the state circuit court's denial of his motion (Doc. 40 at 16, 20, 68–69, 70). However, with regard to Grounds One and Two, Respondent argues Petitioner did not assert a federal constitutional claim (Doc. 40 at 16, 20).[11] Therefore, the claims are not exhausted (*id.* at 16–17, 22). Respondent further argues Petitioner cannot return to state court to present his claims; therefore, they are procedurally barred from federal review (*id.* at 17, 21–22). Respondent contends Petitioner has failed to show cause for the procedural default or that prejudice would result from this court's failure to review the claims; therefore, the claims are barred from federal review (*id.*). Respondent additionally contends that even if this court deemed the claims exhausted, Petitioner has failed to present a cognizable federal claim because his claims present only issues of state law (*id.* at 17–18, 22). Respondent further argues that even if the claims are exhausted and present a federal claim, Petitioner has failed to show that the state court's adjudication of the claims was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established Supreme Court law. Therefore, Petitioner is not entitled to habeas relief (*id.* at 19–20, 22).

As to Claims 12 and 13, Respondent concedes that Petitioner exhausted his claims by raising them in his Rule 3.850 motion and appealing the state circuit court's denial of the motion (Doc. 40 at 68–69, 70). Respondent contends Petitioner failed to demonstrate that the state court's adjudication of his claims was contrary to or an unreasonable application of clearly established federal law (*id.* at 69–70).

The undersigned will begin by addressing Petitioner's ineffective assistance of counsel claim asserted in Claim 12.

       1.       Clearly Established Federal Law

---

[11] Respondent acknowledges that Petitioner described the alleged jurisdictional error as a due process violation, but contends despite Petitioner's characterization, Ground Two presents only a state law claim (Doc. 40 at 20, 22).

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted."

Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).

Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also

constitutionally protected—and would restrict the wide latitude counsel have in making tactical

decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating

prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme

Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some

conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693).

However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland,

466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been different. A
> reasonable probability is a probability sufficient to undermine confidence in the
> outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state

court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the

evidence. Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular

decisionmaker," as the court should presume that the judge or jury acted according to law.

Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Id.* at 695.

2.      Federal Review of State Court Decision

Petitioner raised his ineffective assistance of counsel claim as Grounds 1 and 2 in his Rule

3.850 motion (Ex. M at 3–6). The state circuit court correctly identified the Strickland standard as

the controlling legal standard (Ex. N at 79). The state circuit court denied Petitioner's claim on the

ground that the probable cause affidavit (attached to the court's written opinion as Exhibit B)

indicated that the victim indeed provided a sworn written statement; therefore, the charging

document did not contravene Rule 3.140(g) of the Florida Rules of Criminal Procedure (*id.*).[12] The First DCA affirmed the decision without explanation on this particular issue. Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008). Although the First DCA's written opinion did not provide reasoning for its affirmance on this issue, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment of the lower court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" Sweet v. Sec'y Dept. of Corrs., 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); *see also* Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Therefore, this court must defer to the state court's determination that the charging document did not contravene Rule 3.140(g). In light of this determination that there was no meritorious basis for defense counsel to object to or seek dismissal of the charging document, Petitioner has failed to show that the state court's rejection of his ineffective assistance of counsel claim was unreasonable. Therefore, he is not entitled to federal habeas relief on Claim 12.

With regard to Petitioner's Grounds One and Two and Claim 13 of the instant petition, the undersigned concludes they are not cognizable in federal habeas. Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464

---

[12] Rule 3.140(g) of the Florida Rules of Criminal Procedure provides that the charging document "shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness . . . for the offense." Fla. R. Crim. P. 3.140(g).

U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Carrizales, 699 F.2d at 1054–55. Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991) (quoting Carrizales, *supra*). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). Specifically with regard to challenges to charging documents, federal habeas relief may only be granted on a state charging document where that indictment or information was so defective as to deprive the trial court of jurisdiction. *See* DeBenedictis v. Wainwright, 674 F.2d 841, 842–43 (11th Cir. 1982) (citing Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir.1980)).

In the instant case, Petitioner's contention in Grounds One and Two and Claim 13 that the charging document was defective because it failed to satisfy Rule 3.140(g) and, therefore, deprived the trial court of jurisdiction, presents purely an issue of state law. *See, e.g.*, Bromell v. McNeil, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008) (petitioner's claim that trial court lacked jurisdiction to enter judgment because charging instrument was not based upon sworn testimony of material witness, but based solely upon investigating officer's affidavit was not cognizable in federal habeas corpus). The state court resolved this issue against Petitioner, finding that the charging document was not defective under Rule 3.140(g). This court must abide by the state court's determination. In light of this determination, Petitioner cannot show that the trial court lacked jurisdiction to try him, or that the alleged defect in the information otherwise violated his federal due process rights. Therefore, he is not entitled to habeas relief on Ground One or Two or Claim 12 or 13.

    B.    Ground Three: "Trial court error imposing consecutive sentence for crime in one signal [sic] criminal episode."

Claim 6: "[T]rial court error by imposing 30 years each for three counts of sexual battery upon the same victim which all [sic] three acts occured in one signal [sic] criminal episode."

Claim 7: "[T]rial court violated the double jeopardy claus [sic] applie [sic] equally to both multiple conviction and the imposition of multiple sentence [sic]. Trial court sentence [sic] the petitioner Watson to 30 years each for three counts of sexual battery which to [sic] run consecutive from [sic] Count 4 which all criminal acts occurred in one criminal episode."

Claim 8: "[P]etitioner . . . was denied effective assistance of trial counsel when counsel failure [sic] to object to the court sentencing the defendant Watson to 30 years each on three counts of sexual battery where the State failure [sic] to prove that the three sexual took more than 10 minutes and failure to prove that a sufficiency [sic] temporal break between each acts [sic] in order to allow the defendant to reflect and form new criminal intents for each offense."

In Ground Three and Claim 7, Petitioner contends the trial court was without authority to impose a life sentence on the burglary with assault or battery count (Count IV) to run consecutively to the sentences on the sexual battery counts (Counts I–III), because the crimes arose from a single criminal episode (Doc. 24 at 5, 10). Petitioner states he raised this claim in a Rule 3.850 motion (*id.* at 5). In Claim 6, Petitioner contends the trial court violated the Double Jeopardy Clause by convicting him of three counts of sexual battery where all three sexual acts occurred almost simultaneously and in the same bedroom, and the State failed to prove that he formed a separate criminal intent for each sexual act (*id.* at 9–10). In Claim 8, Petitioner asserts a related claim of ineffective assistance of counsel based upon counsel's failure to object to the alleged double jeopardy violation concerning the sexual battery counts (*id.* at 11).

Respondent concedes Petitioner exhausted the claim asserted in Ground Three and Claim 7 by presenting it as Ground 5 in his amended Rule 3.800 motion and appealing the state circuit court's denial of the motion (Doc. 40 at 23, 48). However, Respondent contends Petitioner does not argue that the alleged sentencing error (that is, imposing a consecutive sentence on Count IV) violated his federal rights, nor does the alleged error present an issue of constitutional dimension (*id.* at 23–24, 48–50). Therefore, the claims are not cognizable in federal habeas (*id.*). As to Claims Six and Eight, Respondent contends Petitioner failed to raise the claims in any of his state court pleadings; therefore, the claims are unexhausted (*id.* at 46–47, 50–51). Respondent additionally

contends the double jeopardy claim is without merit because each sexual act was of a separate character and type and required proof of its elements (*id.* at 47, 51). Therefore, Petitioner's conviction of three counts of sexual battery did not violate double jeopardy principles, and counsel had no basis to argue a double jeopardy violation (*id.*).

With regard to Ground Three and Claim 7, the imposition of sentences by a state court, whether consecutive or concurrent, is strictly a matter of state law. *See* Johnson v. Singletary, 883 F. Supp. 1535, 1542 (M.D. Fla. 1995) (petitioner's claim that trial court erred in imposing consecutive instead of concurrent sentences provides no basis for federal habeas relief because it is solely an issue of state law unless the claim is construed as a double jeopardy violation); *see also, e.g.*, Hargrove v. Sec'y Dep't of Corr., No. 8:06-CV-2360-T-30TBM, 2008 WL 4665767, at *4 (M.D. Fla. Oct. 21, 2008) (same); Drayton v. McDonough, No. 8:03-CV-1249-T27MAP, 2006 WL 2321002, at *7 (M.D. Fla. Aug. 9, 2006) (same); Boardman v. McDonough, No. 8:03-CV-671-T30EAJ, 2006 WL 2024403, at *4 (M.D. Fla. July 17, 2006 (same). As noted *supra*, it is not within the purview of this court to rule upon asserted state trial court errors involving matters purely of state law; rather, on federal habeas, this court may determine only issues which implicate a petitioner's federal rights. *See* Estelle, 502 U.S. at 67–68. Therefore, the issue of whether the state sentencing court erred in ordering Petitioner's sentence on Count IV to be served consecutively to the sentences on Counts I–III, which is the claim Petitioner presents here and in his Rule 3.800 motion, is not a matter upon which federal habeas relief may be granted.

With regard to Claims 6 and 8, review of the record shows that Petitioner embedded a confusing double jeopardy argument and a related claim of ineffective assistance of counsel in Grounds 10 and 18 of his Rule 3.850 motion (Ex. M at 17, 34–36). The undersigned will assume, without deciding, that Petitioner fairly presented a double jeopardy violation and related ineffective assistance of counsel claim to the state courts.

1.      Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306, 104 S. Ct. 1805, 1812, 80 L. Ed. 2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. *See* Benton v. Maryland, 395 U.S.

784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." Justices, 466 U.S. at 307–08 (citation and footnote omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); Whalen v. United States, 445 U.S. 684, 689, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes . . . courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); Albernaz v. United States, 450 U.S. 333, 344, 101 S. Ct. 1137, 1145, 67 L. Ed. 2d 275 (1980) (stating, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentence does not violate the Constitution."); Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187 (1977) (noting "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.").

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." Garrett v. United States, 471 U.S. 773, 778, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985)). Although the Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct under two different statutes, federal courts assume that the legislature ordinarily does not intend to do so "'in the absence of a clear indication of contrary legislative intent.'" Hunter, 459 U.S. at 366 (quoting Whalen, 445 U.S. at 691–92); see also Garrett, 471 U.S. at 779 (holding that multiple punishments are permissible "when the legislative intent is clear from the face of the statute or the legislative history"); Ohio v. Johnson, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 2541 n.8, 81 L. Ed. 2d 425 (1984) ("[I]f it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." (emphasis added)). If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in

Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993). Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes. Hunter, 459 U.S. at 368.

The Eleventh Circuit summarized its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis. First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct. If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply. If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of Blockburger. Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996).

The clearly established federal law governing claims of ineffective assistance of counsel is the Strickland standard set forth *supra*.

### 2. Federal Review of State Court Decision

The state circuit court denied Petitioner's claims (Ex. N at 83, 86–87). The court determined that Petitioner was properly charged with burglary of a dwelling with assault or battery (punishable by life in prison), found guilty by a jury, and sentenced to life in prison (*id.* at 87). Additionally, the court determined that the three sexual batteries were properly charged as separate and distinct criminal events, regardless of their occurrence within a single criminal episode (*id.*). The court rejected Petitioner's argument that burglary with assault or battery and felony battery arose from the same criminal act and subsumed each other, on the ground that assault and battery were two distinct crimes and did not subsume simply because Petitioner committed both offenses on a single victim during a single criminal episode (*id.* at 83). The court further determined that the battery supporting the conviction for burglary with a battery occurred when Petitioner punched the victim in the face, splitting her lip, which was a separate and distinct criminal event from the three sexual batteries

(*id.*).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed without explanation on these issues.  Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008).

The language of the Florida criminal statutes defining sexual battery, burglary of a dwelling with (simple) assault or battery, and felony battery provides no answer to the question of whether the Florida legislature intended to impose cumulative punishments for the same conduct.  *See* Fla. Stat. §§ 794.011(h), 810.02(1)(b)1, 810.02(2)(a), 784.041(1) (2005).  Therefore, the court will look to Florida's rules of statutory construction.  The version of those rules in effect at the time Petitioner committed the criminal offenses provided, in relevant part:

775.021.  Rules of construction

(1)  The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
. . . .
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b)  The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2005).  Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule.  Fla. Stat. § 775.021(4)(b). The exceptions adopt the Blockburger test.  *See* State v. Weller, 590 So. 2d 923, 925 (1991).

Petitioner has failed to show that the offenses in the instant case satisfy the first exception. At the time of Petitioner's offense conduct, April 6 or 7, 2005 (*see* Ex. A), the offense of sexual battery of a person 12 years of age or older who is physically incapacitated had the following four elements:

    1.    the victim was 12 years of age or older;

    2.    the defendant committed an act upon or with the victim in which the sexual organ of the defendant penetrated or had union with the vagina or mouth of the victim, or the defendant committed an act upon the victim in which the vagina of the victim was penetrated by an object;

    3.    the victim was physically incapacitated; and

    4.    the act was committed without the consent of the victim.

*See* The Florida Bar 2002 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instruction on Crimes, Chapter 11.3 Sexual Battery — Victim 12 Years of Age or Older — Specified Circumstances (2002) (instruction adopted in 1981 and amended in 1987).

The offense of burglary of a dwelling with assault or battery had the following three elements:

    1.    the defendant entered a dwelling owned by the victim;

    2.    at the time of entering the dwelling, the defendant had the intent to commit an assault or battery in that dwelling; and

    3.    in the course of committing the burglary, the defendant committed an assault or battery upon any person.

*See* The Florida Bar 2002 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instruction on Crimes, Chapter 13.1 Burglary (2002) (instruction adopted in 1981 and amended in 1985). A "simple" assault had three elements: (1) the defendant intentionally and unlawfully threatened, either by word or act, to do violence to the victim; (2) at the time, the defendant appeared to have the ability to carry out the threat; and (3) the defendant's act created in the victim's mind a well-founded fear that the violence was about to take place. *See id.*, Chapter 8.1 Assault (2002) (instruction adopted in 1981 and amended in 1997). A "simple" battery had one element, either (1) the defendant intentionally touched or struck the victim against her will; or (2)

the defendant intentionally caused bodily harm to the victim. *See id.*, Chapter 8.3 Battery (2002) (instruction adopted in 1981).

The offense of felony battery had the following two elements:

> 1. the defendant actually and intentionally touched or struck the victim against her will; and

> 2. the defendant caused the victim great bodily harm, permanent disability, or permanent disfigurement.

*See* The Florida Bar 2002 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instruction on Crimes, Chapter 8.5 Felony Battery (2002) (instruction adopted in 2000).

Although the offenses of felony battery and burglary of a dwelling with battery share a common element of simple battery, each offense additionally required proof of at least one other element. Additionally, the offenses of felony battery and sexual battery of a person 12 years of age or older who is physically incapacitated require proof of different elements. Likewise, the offenses of sexual battery and burglary of a dwelling with battery have different elements. *See* State v. Reardon, 763 So. 2d 418, 420 (Fla. 5th DCA 2000) (convictions for burglary with a battery and aggravated battery did not constitute double jeopardy violation; although both offenses shared common element of battery, each offense in addition required proof of elements not required by the other and, therefore, failed "same elements" test described in Blockburger, 284 U.S. 299; also, the two offenses were not degrees of same crime; finally, neither offense was subsumed by the other because aggravated battery required use of a deadly weapon, an element not required for offense of burglary with a battery); Farmer v. State, 709 So. 2d 592, 593 (Fla. 1st DCA 1998) (convictions for burglary with assault or battery, and battery of elderly person did not violate double jeopardy; each offense required a different element of proof that the other did not). Therefore, the first Blockburger exception does not apply to any of Petitioner's sentences.

Furthermore, the second exception is not satisfied because none of the crimes are a degree of the other. Moreover, according to the tables of lesser included offenses included with each individual jury instruction, the third exception is not satisfied because felony battery is not a lesser included offense of burglary with assault or battery or sexual battery; burglary with assault or battery

is not a lesser included offense of felony battery or sexual battery; and sexual battery is not a lesser included offense of felony battery or burglary with assault or battery.[13]

Finally, the evidence adduced at Petitioner's trial showed that multiple batteries occurred during Petitioner's criminal episode. The State presented evidence that Petitioner knocked on the victim's front door in the early morning hours of April 7, and then broke through the chained door and entered her apartment (*see* Ex. B at 40–63, 113–14). After Petitioner entered the apartment, he struck the victim in the face, causing a cut to her lip that required stitches and left a scar. Petitioner then moved the victim to a bedroom and (1) touched her vagina with his mouth, (2) penetrated her vagina with his fingers or penis or both, and (3) forced the victim's mouth on his penis (*see* Ex. B). This evidence shows that Petitioner committed three separate sexual batteries and one additional battery (punching the victim in the face) that caused the victim great bodily harm or permanent disfigurement, in addition to burglary of a dwelling with assault or battery.

Petitioner has failed to demonstrate by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's denial of his double jeopardy and ineffective assistance of counsel claims. Additionally, he has failed to establish that the state court applied a rule that contradicts the governing law set forth in <u>Missouri v. Hunter</u>, <u>Blockburger v. United States</u>, or <u>Strickland v. Washington</u>, or that the state court confronted a set of facts that are materially indistinguishable from a Supreme Court case and nevertheless arrived at a result different from Supreme Court precedent. Therefore, he has not demonstrated that the state court's adjudication of his claim was contrary to clearly established federal law. Finally, Petitioner has not demonstrated that the state court's ultimate conclusion was an unreasonable application of <u>Hunter</u>, <u>Blockburger</u>, or <u>Strickland</u>. Accordingly, he is not entitled to federal habeas relief on Ground 3 or Claims 6–8.

     C.     <u>Ground Four: "Ineffective assistance of trial counsel."</u>

---

[13] <u>Simple</u> battery is a necessarily (Category One) lesser included offense of sexual battery, and <u>aggravated</u> assault and <u>simple</u> assault are permissive (Category Two) lesser included offenses of sexual battery; however, Petitioner was not convicted of <u>simple</u> or <u>aggravated</u> assault or battery (he was convicted of <u>felony</u> battery). Similarly, <u>simple</u> battery, <u>simple</u> assault, <u>aggravated</u> battery, and <u>aggravated</u> assault are permissive lesser included offenses of burglary with assault or battery but, again, Petitioner was not convicted of <u>simple</u> or <u>aggravated</u> assault or battery.

Claim 14:  "The petitioner Watson contend [sic] that he was denied effective assistance of trial counsel when counsel choose [sic] not have [sic] petitioner Watson physically participate [sic] at the immediate suite [sic] during the exercising examination [sic] of four prospective jurors which deprivate [sic] petitioner Watson of his constitutional rights when trial counsel unlawfully concealed from the Defendant Watson his constitutional rights to physically participat [sic] in all pertinent aspects of the jury trial selection which prejudiced, [sic] and deprivated [sic] Watson of a fair trial."

Claim 15:  "The petitioner Watson contend [sic] that trial court committed fundamental reversable [sic] error when trial court failure [sic] to obtain on the record by either certify [sic] or to make proper inquiry into whether defendant Watson waived his constitutional rights to be present at the immediate bench conference during which peremptory challenge were [sic] exercised by trial counsel."

Petitioner contends his trial counsel was ineffective by failing to advise him of his constitutional right to physically participate in the bench conferences that occurred during jury selection (Doc. 24 at 5, 14–15).  He asserts peremptory challenges were exercised during the bench conferences, and counsel's failure to permit his participation violated his constitutional rights (*id.*). In a related claim, Petitioner contends the trial court erred by failing to inquire as to whether he knowingly and voluntarily waived his right to be present during the bench conferences (*id.* at 15–16).  Petitioner contends had he been allowed to participate in the bench conferences, he would not have exercised the same peremptory challenges that defense counsel exercised, and a different jury may have been selected (*id.* at 16).

Respondent concedes that Petitioner exhausted Ground Four and Claim 14, his ineffective assistance of counsel claims, by raising them in his Rule 3.850 motion and appealing the state circuit court's denial (Doc. 40 at 25, 71–72).  Respondent contends Petitioner has failed to satisfy the standard for relief under § 2254(d)(1) as to those claims (*id.* at 25–33).  With regard to Claim 15, Respondent contends Petitioner did not present an independent claim of trial court error to the state courts (*id.* at 73).  Therefore, the claim is procedurally defaulted for purposes of federal habeas (*id.* at 73–74).

The undersigned will review Petitioner's ineffective assistance of counsel claim first.

1.      Clearly Established Federal Law

The clearly established standard applicable to claims of ineffective assistance of counsel is the Strickland standard set forth *supra*.

2.      Federal Review of State Court Decision

In Ground 15 of Petitioner's Rule 3.850 motion, he argued that defense counsel failed to inform him that he had the right to be present and participate in sidebar conferences that occurred during jury selection (Ex. M at 25–27).  Petitioner argued he was prejudiced by the alleged error because he "did not like" any of the jurors chosen by defense counsel (*id.*).  Petitioner asserted that the majority of the persons chosen for the jury were white women, and this was a case involving sexual battery by a black man against an older white woman (*id.*).

As previously noted, the state circuit court correctly identified the <u>Strickland</u> standard as the controlling legal standard (Ex. N at 79).  The state court denied the claim on the ground that Petitioner failed to demonstrate that the outcome of the proceedings would have been different had he been present at the sidebar conferences (*id.* at 85).  The First DCA affirmed the decision without providing its reasoning on this particular issue.  <u>Watson v. State</u>, 975 So. 2d 572 (Fla. 1st DCA 2008).

The transcript of jury selection shows that Petitioner was present at jury selection (Ex. B at 3–129).  However, at several points during the questioning process, the trial judge permitted prospective jurors to approach the bench to answer a question privately or discuss a private matter, and Petitioner was not present at sidebar.  The first of these incidents occurred when prospective juror Ms. Elie asked to speak with the judge privately (*id.* at 28–29).  The record reflects that the prosecutor and defense counsel approached the bench (*id.* at 29).  The trial judge asked defense counsel if he wished to waive Petitioner's presence for this matter, to which defense counsel responded "Yes" (*id.*).  Ms. Elie discussed the fact that she suffered from osteoporosis and believed it would interfere with her physical ability to serve as a juror (*id.* at 29–30).  Another bench conference occurred when prospective juror Ms. Campbell asked if she could answer a question in private about a family member's arrest (*id.* at 35–36).  The record reflects that the prosecutor and defense counsel were present at the bench (*id.* at 36).  Ms. Campbell discussed the fact that her son was convicted of felony fraud ten years prior and served time in prison (*id.* at 36).  She stated she had no involvement with the criminal process concerning her son's case, and nothing about the event caused her concern as to whether she would be a fair and objective juror (*id.* at 37).  Following this bench conference, the prosecutor asked defense counsel if he planned to continuously waive

Petitioner's presence at sidebars, to which defense counsel answered: "Yeah, for these things, it will be a blanket waiver." (*id.* at 37–38). The judge responded, "Okay." (*id.* at 38). The third incident occurred when prospective juror Ms. Pickles was answering a question about a family member's arrest (*id.* at 55). The record reflects that counsel approached the bench (*id.*). Ms. Pickles discussed the fact that three family members had been arrested in the past: her husband was arrested for forging a check, her brother-in-law was arrested for DUI, and her dad wrote a bad check (*id.*). Ms. Pickles stated that none of those events would influence how she would view Petitioner's case (*id.* at 56). The fourth incident occurred when the prosecutor requested a bench conference with respect to prospective juror Ms. Strauss regarding her possible knowledge of the victim in this case (*id.* at 84–85). Ms. Strauss mentioned she worked at a doctor's office, and the prosecutor believed the victim may have seen a doctor at that office for treatment of her multiple sclerosis (*id.*). Ms. Strauss stated that the victim's name was not at all familiar (*id.* at 84–86).

Following the questioning of the venire, the prospective jurors exited the courtroom and jury selection began (*id.* at 112). Defense counsel requested time to consult with Petitioner and was granted five minutes. (*id.* at 112–13). Following a recess, jury selection resumed, and prospective jurors Campbell, Johnson, Digruccio, Choppin, Stubrud, and Faist were eventually selected to serve as trial jurors, with Fillyau and Hatchett selected as alternates (*id.* at 113–25).

Petitioner has failed to demonstrate that any asserted deficient performance of counsel in waiving Petitioner's presence at the four sidebar conferences resulted in prejudice. Initially, the transcript of jury selection demonstrates that neither the prosecutor nor defense counsel exercised peremptory challenges during any of the sidebar conferences. Furthermore, aside from Petitioner's conclusory allegation that a different jury "might" have been selected had he been present during sidebar, Petitioner has not alleged how his presence at the sidebar conferences would have resulted in a different outcome, either in the empaneling of the jury or the result of his trial. Petitioner suggested in his Rule 3.850 motion that defense counsel should not have rejected prospective juror Ms. Maloy, a black female. However, the record confirms that Ms. Maloy was not one of the prospective jurors who took part in a sidebar conference with the judge where Petitioner was not present. As previously noted, it is clear from the record that trial counsel conferred with Petitioner prior to picking the jury panel. Petitioner has not alleged that trial counsel failed to inform him of

what occurred at the sidebar conferences. Furthermore, Petitioner has not alleged how anything that occurred at sidebar with prospective jurors Elie, Campbell, Pickles or Strauss resulted in prejudice to him such that there is a reasonable probability that, but for counsel's waiver of his presence at these sidebars, the outcome of the proceeding would have been different. Therefore, Petitioner has failed to demonstrate that the state court's adjudication of his ineffective assistance of counsel claim was contrary to or an unreasonable application of <u>Strickland</u>.

With regard to Petitioner's claim that the trial court violated his due process rights by failing to determine whether he knowingly and voluntarily waived his presence at the sidebar conferences, Petitioner has failed to demonstrate he is entitled to relief. Petitioner raised this claim as Claim 8 in his supporting memorandum accompanying his first Rule 3.850 motion (Ex. M at 51). There is no indication in the record that the state court adjudicated this claim of trial court error independent of Petitioner's claim of ineffective assistance of counsel. The undersigned will therefore review the claim de novo.

Petitioner relies upon <u>Coney v. State</u>, 653 So. 2d 1009 (Fla. 1995) in support of his claim of trial court error (Doc. 24 at 9). Under <u>Coney</u>, a criminal defendant must be present at the bench during the exercise of peremptory challenges or expressly waive that right. *Id.* In the instant case, however, the record refutes Petitioner's assertion that any peremptory challenge was exercised during a sidebar conference (Ex. B at 111–25). Furthermore, Petitioner has failed to demonstrate that any of the sidebars constituted a critical stage of the trial proceedings, or that his presence would have contributed to the fairness of the proceedings, which is the only circumstance in which Petitioner would have a constitutional right to be present. *See* <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987) (Due Process Claus of Fourteenth Amendment guarantees a defendant the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure); <u>United. States. v. Vasquez</u>, 732 F.2d 846, 848–49 (11th Cir. 1984) (bench conference, attended by defendant's counsel and called to discuss evidentiary matter relative to defendant's own cross-examination, was not critical stage of trial proceedings at which defendant had a right to be present); <u>United States v. Howell</u>, 514 F.2d 710, 714 (5th Cir. 1975) (defendant had no right to be present at conference with judge and juror on subject of attempted bribery of the juror, or at in camera conference with judge

and all counsel at which the earlier conference was discussed, because conferences were not critical stages in trial proceedings);[14] <u>Mathews v. Crosby</u>, No. 804CV139T17EAJ, 2005 WL 3556041, at *16 (M.D. Fla. Dec. 29, 2005) (there is no constitutional requirement that defendant be physically present at bench when peremptory challenges are exercised). Therefore, Petitioner failed to establish constitutional error with respect to the trial court's failure to ascertain whether Petitioner knowingly and voluntarily waived his presence at sidebar. Moreover, Petitioner has failed to show that his absence at sidebar affected his substantial rights. Therefore, he has failed to demonstrate he is entitled to federal habeas relief on this claim. *See* <u>United States v. Cuchet</u>, 197 F.3d 1318, 1320–21 (11th Cir. 1999) (trial court's alleged error in excluding defendant from confidential portion of voir dire of prospective jurors that was conducted at sidebar was harmless error; defendant was present during general voir dire that took place in open court, sidebar voir dire concerned only limited topics, defense counsel was given opportunity to question each prospective juror at the bench, defense counsel was given some opportunity to review his notes and to confer with defendant after sidebar conference, and evidence against defendant was overwhelming); *see also, e.g.*, <u>United State v. Faxon</u>, No. 09-16101, 2010 WL 4997842, at *1 (11th Cir. Dec. 8, 2010) (trial court's holding sidebar conference outside of defendant's presence did not affect defendant's substantial rights because court accurately summarized sidebar conference, and discussion had no effect on proceeding).[15]

    D.    <u>Claim 1: "Ineffective assistance of counsel failure [sic] to object to the trial court improper [sic] jury instruction when on four separately [sic] pages of the jury instruction, the fourth element is omited [sic] from the jury instruction on the sexual battery element which is material and pertaining to the elements of the crime offense [sic]."</u>

       <u>Claim 2: "Ineffective assistance of trial counsel when counsel allowed the court to submit the verdict form that does not necessarily includ [sic] all lesser included offense [sic] of burglary of a structure."</u>

In Claim 1, Petitioner contends his trial counsel was ineffective for failing to object to the jury instruction on sexual battery because the instruction omitted the fourth element of the offense

---

[14] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

[15] The undersigned cites <u>Faxon</u> only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

(Doc. 24 at 7). In Claim 2, he contends counsel was ineffective for allowing the verdict form to omit all of the lesser included offenses of burglary of a structure (*id.*).

Respondent contends Petitioner presented both claims to the state courts in his second Rule 3.850 motion and amended motion, and the state court denied the motions based upon an independent and adequate state procedural bar (Doc. 40 at 33–37). Therefore, the claims are procedurally defaulted for purposes of federal habeas (*id.*).

Petitioner raised these issues as Ground M in his second Rule 3.850 motion and Ground 7 in his amended motion (Ex. II at 4–5, 12–13; Ex. KK at 104). In both of the written opinions dismissing the motions, the state circuit court found as fact that Petitioner previously filed a Rule 3.850 motion on May 24, 2007, and the motion was denied on the merits in an order issued on September 10, 2007 (Ex. JJ at 18, Ex. LL at 121). The state circuit court determined that Petitioner's second Rule 3.850 motion and amended motion were successive and constituted abuse of the judicial process under Rule 3.850(f), the procedural rule permitting the court to dismiss a second or successive Rule 3.850 motion if the judge finds that it alleges new and different grounds for relief, and the failure of the movant to assert those grounds in a prior motion constituted an abuse of the post-conviction process (Ex. JJ at 19, Ex. LL at 120–21). *See* Fla. R. Crim. P. 3.850(f). The court further found that the claims raised by Petitioner in his second Rule 3.850 motion and amended motion did not qualify as newly discovered evidence, did not satisfy an exception to the rule against successive motions (as set forth in Rule 3.850(b)(1)–(3)), and were available to him at the time he filed his first motion (Ex. JJ at 20, Ex. LL at 120–21). Therefore, the court denied the motions as successive (*id.*) The First DCA affirmed the decision without written opinion (Ex. OO).

The last state court rendering judgment clearly and expressly stated it was relying on state procedural rules to resolve Petitioner's federal claims. *See* Ylst, 501 U.S. at 803 (although a procedural bar may be removed if the last state court to be presented with a claim ignores the bar and reaches the merits, when the trial court's denial of a claim on procedural grounds is affirmed by the appellate court per curiam and without opinion, the appellate decision is deemed to have affirmed the procedural bar). Additionally, the state court's decision on the procedural issue rested entirely on state law grounds, namely, Rule 3.850(f), and this rule is firmly established and regularly followed by Florida courts. *See* Fla. R. Crim. P. 3.850(f); *see also* Frazier v. State, 898 So. 2d 1183,

1183–84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous post-conviction motion); <u>Washington v. State</u>, 876 So. 2d 1233, 1234 (Fla. 5th DCA 2004) (same). Therefore Petitioner's claims are procedurally barred from federal review unless he satisfies the "cause and prejudice" or "fundamental miscarriage of justice" exception to the procedural bar.

Petitioner has failed to establish he is entitled to review of his claims under the "cause and prejudice" exception to the procedural bar. Additionally, he has failed to establish entitlement to review under the fundamental miscarriage of justice exception, since he does not allege the existence of new evidence that establishes his innocence. *See* <u>Schlup</u>, 513 U.S. at 327; *see also* <u>House</u>, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). Therefore, Claims 1 and 2 are barred from federal habeas review.

    E.    <u>Claim 3: "Ineffective assistance of trial counsel failure [sic] to object to the verdict form that does not either allow the jury to make a [sic] appropriate determination regarding each count of the information charging the defendant with three separate count [sic] of sexual battery, which relieve [sic] the State of burden of proving each element beyond a reasonable doubt."</u>

Petitioner claims that his trial counsel should have objected to the verdict form as to the three sexual battery counts on the ground that the form failed to permit the jury to make an "appropriate determination" as to each sexual battery count, thereby relieving the State of proving each element of each sexual battery (*see* Doc. 24 at 7).

Respondent argues Petitioner's claim is conclusory and vague because he includes no factual explanation as to how the verdict form was improper, how trial counsel was deficient, or how any deficiency resulted in prejudice; therefore, he has failed to sufficiently raise a constitutional issue (Doc. 40 at 38–39). Respondent further argues that Petitioner raised only a variation of this claim in his first Rule 3.850 motion by mentioning the alleged error in the verdict forms in the context of his claim that counsel was ineffective for failing to file a motion for mistrial or judgment of acquittal on Count II (one of the sexual battery counts) based upon the State's failure to prove whether he penetrated the victim's vagina with his finger or his penis (*id.* at 39). Respondent additionally contends that to the extent this constitutes proper exhaustion, Petitioner failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of Strickland (*id.* at 39–41).

Upon review of the record, the undersigned concludes that Petitioner did not fairly present this issue to the state courts. In Ground 12 of his first Rule 3.850 motion, Petitioner claimed that his trial counsel was ineffective for failing to file a motion for mistrial or judgment of acquittal on Count II, based upon the State's failure to prove whether he penetrated the victim's vagina with his finger or his penis (Ex. M at 19–20). In support of this claim, Petitioner argued that the verdict form failed to distinguish whether the jury found that he penetrated the victim with his finger or penis (*id.* at 20). He argued further that the trial court failed to correctly instruct the jury on the issue of "digital penetration" (*id.* at 20–21). Petitioner argued that the lack of a correct instruction on digital penetration, combined with the lack of specificity in the verdict form as to whether he penetrated the victim with his finger or penis, provided a basis for counsel's making a motion for mistrial or for judgment of acquittal as to the sexual battery charged in Count II (*id.* at 19–21). None of these arguments is the same as Petitioner's argument asserted in the instant claim (Claim 3) of his federal petition. In the instant claim, Petitioner does not fault counsel for failing to file a motion for retrial or motion for judgment of acquittal (the claim he asserted in his Rule 3.850 motion); instead, he faults counsel for failing to object to the verdict form. Additionally, in the instant federal claim, Petitioner challenges counsel's failure to object to the verdict form on all three counts of sexual battery, whereas, in his Rule 3.850 motion, he argued that the lack of specificity in the verdict form as to Count II (that is, whether he penetrated the victim with his fingers or penis) supported a motion for mistrial or acquittal on that count. Therefore, the undersigned concludes that Petitioner failed to fairly present the instant federal claim in Ground 12 of his first Rule 3.850 motion. Moreover, Petitioner did not present the instant claim in any other claim properly presented to the state courts. Therefore, Petitioner did not exhaust Claim 3.

Petitioner cannot properly return to state court to present his claim in a Rule 3.850 motion, since the motion would be subject to dismissal as successive under Rule 3.850(f). Additionally, Petitioner has failed to establish he is entitled to review of his claims under the "cause and prejudice" or fundamental miscarriage of justice exception to the procedural bar. Therefore, the claim is barred from federal habeas review.

F. <u>Claim 4: "Ineffective assistance of counsel for failure to object to the jury instruction which omitted a clear definition of vagina."</u>

Petitioner's supporting argument is completely unrelated to the statement of his claim. Petitioner argues the verdict on Count II (which alleged he penetrated the victim's vagina with his fingers and/or penis) was contrary to the evidence (Doc. 24 at 7–8). He states the amended information charged him with placing his finger and/or penis in or upon the victim's vagina (*id.* at 8). He states the trial court instructed the jury on "union" only; and the jury returned a general verdict without determining whether his fingers penetrated or had union with the victim's vagina (*id.*). Petitioner states this allowed the jury to convict him of "union" only, which was contrary to the weight of the evidence (*id.*).

Respondent contends Petitioner essentially states a claim of trial court error, not ineffective assistance of counsel (Doc. 40 at 42). Respondent states Petitioner raised this claim of trial court error in his amended second Rule 3.850 motion; and the state court denied the motion based upon an independent and adequate state procedural bar (*id.* at 42–43). Therefore, the claim is procedurally defaulted for purposes of federal habeas (*id.* at 43–44).

Upon review of the record, the undersigned concludes that Petitioner did not fairly present to the state courts a claim of ineffective assistance of counsel based upon counsel's failure to object to omission of the definition of vagina from the jury instructions. Additionally, Petitioner did not fairly present a claim of ineffective assistance of counsel based upon counsel's failure to challenge the jury instructions, the verdict form, or Petitioner's conviction as to Count II, on the ground that the jury was permitted to convict based upon a "union" theory, even though the evidence did not prove "union" and the amended information charged him only with penetration.[16] Moreover, the factual assertions underlying Petitioner's claim are refuted by the record. Petitioner alleges the amended information charged him in Count II with placing his fingers or penis "in or upon" the victim's vagina (*see* Doc. 24 at 8); however, the Third Amended Information actually alleges that Petitioner committed a sexual battery "by <u>penetrating</u> victim's [sic] vagina with his fingers and/or penis, . . ." (Ex. A at 1) (emphasis added). Additionally, as to Count II, the trial court instructed the jury only on penetration, not union as Petitioner alleges: "Two, Willie J. Watson committed an act

---

[16] Furthermore, even if this court construed Petitioner's claim as one of trial court error instead of ineffective assistance of counsel, and the court further concluded that Petitioner exhausted this claim by raising it as Grounds 14 and 15 in his amended second Rule 3.850 motion (*see* Ex. KK at 112–14), the claim is barred from federal review since the state court denied the motion based upon an independent and adequate state procedural rule, namely, Rule 3.850(f) (*see* Ex. LL).

upon [the victim] in which the fingers and /or penis of Willie J. Watson <u>penetrated</u> the vagina of [the victim]." (Ex. B at 449) (emphasis added).  Moreover, the evidence showed that Petitioner's sperm was found in the victim's vagina, thereby establishing penile penetration.  Therefore, Petitioner has failed to show that counsel had a meritorious basis for arguing that Petitioner was erroneously convicted of Count II due to improper jury instructions on the penetration/union element, an improper verdict form which failed to require a jury finding as to penetration or union, or insufficient evidence of penetration.  Therefore, Petitioner has failed to demonstrate he is entitled to relief on this claim.

      G.    <u>Claim 5:  "Ineffective assistance of trial counsel for failure to object to the court allowing the assistance [sic] State prosecutory [sic] to assessment [sic] of 80-point [sic] instead of 40 point [sic] and assesment [sic] of 18 points for victim injury and 4 points for legal statue [sic]."</u>

Petitioner contends his counsel was ineffective for failing to object to the assessment of several points on his sentencing scoresheet, specifically, 18 victim injury points, 4 legal status points, and 80 points instead of 40 points (apparently for penetration as to Count II (*see* Doc. 24 at 11)), on the ground that the points were not supported by jury findings, in violation of <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) (Doc. 24 at 8–9).

Respondent contends Petitioner failed to exhaust this claim in the state courts (Doc. 40 at 45).  Respondent states that although Petitioner raised a claim of trial court error with respect to the assessment of sentencing points as Ground 6 in his amended Rule 3.800(a) motion, he did not raise a related claim of ineffective assistance of counsel in any of his post-conviction motions (*id.*).

The state court record demonstrates that Petitioner did not raise a claim of ineffective assistance of counsel based upon counsel's failure to object to the assessment of certain points on Petitioner's sentencing scoresheet, in any of his state post-conviction motions.  Additionally, as with Petitioner's other unexhausted claims, Petitioner cannot properly return to state court to present his claim in a Rule 3.850 motion, since the motion would be subject to dismissal as successive under Rule 3.850(f).  Further, Petitioner has failed to establish he is entitled to review of his claims under the "cause and prejudice" or fundamental miscarriage of justice exception to the procedural bar.  Therefore, Claim 5 is barred from federal habeas review.

      H.    <u>Claim 9:  "The petitioner Watson contend [sic] that his appellate counsel rendered ineffective assistancy [sic] of counsel when appellate counsel failure [sic] to raise on direct</u>

appeal concerning victim injury, legal statues [sic] point [sic] and 80 point [sic] for penetration instead of 40 point [sic] without submitting these factor [sic] to a jury and proven [sic] beyond a reasonabl [sic] doubte [sic]."

Petitioner's claim is quoted in full above. Respondent concedes Petitioner exhausted the parts of his claim which fault appellate counsel for failing to challenge the assessment of sentencing points for victim injury and penetration (Doc. 40 at 52). However, Petitioner did not exhaust the part of his claim regarding the assessment of legal status points; therefore, that aspect of his claim is unexhausted and procedurally defaulted (*id.*). As to the exhausted claims, Respondent argues Petitioner has failed to demonstrate that the First DCA's denial was contrary to or an unreasonable application of clearly established federal law (*id.* at 54–57).

### 1. Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the Strickland standard. *See* Smith v. Robbins, 528 U.S. 259, 285,120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate

counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

2.     Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of appellate counsel in his state habeas petition (Ex. W at 3, 5–7). The First DCA denied the petition on the merits (Ex. X). The First DCA did not cite Strickland; however, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).

Review of the transcript of the sentencing hearing reflects that Petitioner's trial counsel did not object to the assessment of sentencing points for victim injury, penetration, or legal status (*see* Ex. E). Therefore, those issues were not preserved for appellate review. *See* McGregor v. State, 789 So. 2d 976, 977 (Fla. 2001) (claim of Apprendi error must be preserved for review and does not constitute fundamental error). As previously discussed, appellate counsel's failure to raise unpreserved issues is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. *See* Diaz, 402 F.3d at 1142; Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86. Therefore, Petitioner has failed to demonstrate that the First DCA's denial of his claim was contrary to or an unreasonable application of Strickland.

I.     Claim 10:  "The petitioner Watson contend [sic] that his appellate counsel rendered ineffectives [sic] assistance of counsel when appellate counsel failure [sic] to raise on direct appeal trial court fundamental [sic] error which trial court failure [sic] to delineate the elements of burglary of a dwelling."

Petitioner contends his appellate counsel should have challenged the trial court's failure to instruct the jury that burglary of a structure was a lesser included offense of burglary of a dwelling (Doc. 24 at 11).

Respondent contends Petitioner failed to exhaust this claim because he failed to present it in his state habeas petition (Doc. 40 at 58). Respondent argues Petitioner has failed to show cause

for his failure to raise the issue; therefore, the claim is procedurally defaulted for purposes of federal habeas (*id.*). Additionally, Respondent contends the claim is without merit because the jury was instructed on the lesser included offense of burglary of a structure (*id.*).

Review of the state court record confirms Respondent's contention that Petitioner did not raise this issue in his state habeas petition; therefore his claim is not exhausted (Ex. W). Additionally, state procedural rules preclude Petitioner from returning to state court to present his claim in a second habeas petition. *See* Card v. Dugger, 512 So. 2d 829, 830–31 (Fla. 1987) (citations omitted). Moreover, Petitioner has not satisfied the "cause and prejudice" exception or the fundamental miscarriage of justice exception to the procedural bar. Therefore, he is not entitled to federal habeas review of Claim 10.

J. Claim 11: "The petitioner Watson contend that he was denied effective assistance of appellate counsel where as [sic] counsel failure [sic] to argure [sic] the issue of burglary of a dwelling for [sic] in order to convict the defendant Watson of the crime of burglary the jury should have been instructed that the jury was required to find that the petitioner remained in apartment of the victim "surreptitiously."

Petitioner asserts counsel should have argued on appeal that the jury instructions on burglary failed to instruct that in order to convict on a "remaining in" theory (as opposed to a non-consensual entry theory), the jury must find that he "remained in" surreptitiously (Doc. 24 at 12). Petitioner states counsel should have argued that once Petitioner established that the victim consented to his entry, the absence of evidence that he remained in the apartment surreptitiously rendered his conviction fundamentally erroneous (*id.*). Petitioner cites Wiggins v. State, 933 So. 2d 1224 (Fla. 1st DCA 2006) as the legal basis for the argument that appellate counsel should have made (*id.*).

In Wiggins, the defendant appealed the trial court's summary denial of his Rule 3.850 claim that trial counsel was ineffective for failing to object to the omission of "surreptitiously" to modify "remaining in" in the jury instruction for burglary. 933 So. 2d at 1225. In Wiggins's Rule 3.850 motion, he relied on Delgado v. State, 776 So. 2d 233 (Fla. 2000), and alleged that counsel was ineffective for failing to object to the omission of "surreptitiously" to modify "remaining in" in the jury instruction for burglary. *Id.* The defendant alleged that he was prejudiced by his counsel's failure to object to the incorrect instruction because he would not have been convicted of burglary if the jury knew that this instruction required him to surreptitiously remain in the apartment. *Id.* In determining that the defendant stated a facially sufficient claim, the First DCA noted that in

Delgado, the Florida Supreme Court held that if a person is licensed or invited to enter a dwelling or other building, he cannot be convicted of burglary under the "remaining in" theory unless the person surreptitiously remained on the premises. Wiggins, 933 So. 2d at 1225 (citing Delgado, 776 So. 2d at 240). The Wiggins court further noted:

> Delgado stands for the proposition that "evidence of a crime committed inside the dwelling . . . of another cannot, in and of itself, establish the crime of burglary. Stated differently, the State cannot use 'the criminal act to prove both intent and revocation of the consent to enter.'" State v. Ruiz, 863 So. 2d 1205, 1211 (Fla. 2003) (citing Delgado v. State, 776 So. 2d 233, 238 (Fla. 2000)). Conviction under a general verdict, as here, is improper when it rests on multiple bases, one of which is inadequate. Delgado, 776 So.2d at 241.

933 So. 2d at 1225. Therefore, the First DCA reversed the circuit court's summary denial of the defendant's ineffective assistance of counsel claim and remanded for further proceedings. *Id.* at 1226.

Respondent concedes Petitioner exhausted this claim by raising it in his state habeas petition (Doc. 40 at 60). Respondent contends Petitioner has failed to demonstrate that appellate counsel performed deficiently or that counsel's performance affected the outcome of the proceeding (*id.*).

1.    Clearly Established Federal Law

The clearly established standard applicable to claims of ineffective assistance of appellate counsel is the Strickland standard set forth *supra*.

2.    Federal Review of State Court Decision

In Petitioner's state habeas petition, he argued that appellate counsel was ineffective for failing to argue on appeal that fundamental error occurred when the trial court instructed the jury on a "remaining in" theory of burglary (Ex. W at 10–12). Petitioner argued that the burglary theory pursued by the State was that he entered the victim's apartment without her consent and with intent to commit an assault or battery therein; therefore, the jury instruction on "remaining in" permitted the jury to convict on this alternative theory even without evidence that he formed the intent to commit an assault or battery prior to entering the apartment (*id.*). The First DCA denied Petitioner's ineffective assistance of appellate counsel claim without explanation (Ex. X).

Upon review of the parties' briefs submitted in Petitioner's direct appeal, the undersigned concludes that Petitioner failed to demonstrate deficient performance or prejudice. Petitioner's

appellate counsel argued that the State prosecuted Petitioner on the theory that he unlawfully entered the apartment or remained in the apartment after the victim withdrew her consent for entry (Ex. I at 13–15). Counsel argued that the State presented no evidence that Petitioner "entered into or remained in the areas of the premises which he . . . should have known were not open to the public," yet the court gave this instruction, thereby allowing the jury to convict on a theory which the State did not pursue, and which was wholly unsupported by the evidence (*id.* at 14). Counsel contended this error in the jury instructions constituted fundamental error (*id.*).

In its answer brief, the State argued that its theory of prosecution was that Petitioner entered the victim's apartment without her consent, hit her in the face, and committed three separate acts of sexual battery upon her (Ex. I at 6). Petitioner's theory of defense was that he and the victim had consensual sexual relations in the past and that she let him into the apartment on the instant occasion and the two had consensual sex (*id.* at 6–7). The State argued that at the time Petitioner committed the charged offenses, April 7, 2005, the burglary statute provided as follows:

**810.02 Burglary.**

(1)(a) For offenses committed on or before July 1, 2001, "burglary" means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.

(b) For offenses committed after July 1, 2001, "burglary" means:

1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or

2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:

a. Surreptitiously, with the intent to commit an offense therein;

b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or

c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

(Ex. I at 7 (citing Fla. Stat. § 810.02 (2004))).

The State further argued that the standard jury instruction for burglary reads as follows:

**13.1 BURGLARY**
§810.02, Fla. Stat.

*Give this statement of the elements if the charge is unlawful entry*:

**To prove the crime of Burglary, the State must prove the following three elements beyond a reasonable doubt:**

**1.** (Defendant) **entered a [structure][conveyance] owned by or in the possession of** (person alleged).

**2.** (Defendant) **did not have the permission or consent of** (person alleged) **or anyone authorized to act for [him][her] to enter the [structure][conveyance] at that time.**

**3. At the time of entering the [structure][conveyance]** (defendant) **had a fully-formed conscious intent to commit the offense of** (crime alleged) **in that [structure][conveyance].**

*Give this statement of the elements if the charge is unlawfully remaining:*

**To prove the charge of burglary, the state must prove the following two elements beyond a reasonable doubt:**

**1.** (Defendant) **had permission or consent to enter a [structure][conveyance] owned by or in the possession of** (person alleged).

**2.** (Defendant) **after entering the [structure][conveyance] remained therein**

*Give a, b, or c as applicable*

**a. surreptitiously and with the fully-formed conscious intent to commit the offense of** (crime alleged).

**b. after permission to remain had been withdrawn and with the fully-formed conscious intent to commit the offense of** (crime alleged).

**c. with the fully-formed conscious intent to commit or attempt to commit the offense of** (forcible felony alleged).

*Define the crime or forcible felony alleged.*

*Give whichever bracketed language applies*

**A person may be guilty of this offense [if he or she originally entered the premises at a time when they were open to the public, but remained there after he or she knew that the premises were closed to the public],**

**[or]**

**[if he or she entered into or remained in areas of the premises which he or she knew or should have known were not open to the public],**

**if he or she had the intent to commit the crime described in the charge.**

(Ex. I at 8–9 (citing Fla. Stan. Jury Insts. (Crim.) (2004)).

The State argued that the judge instructed the jury as follows on Count IV (Burglary):

Count 4, burglary. To prove the crime of burglary, the State must prove the following three elements beyond a reasonable doubt.

One, Willie J. Watson entered a structure owned by or in the possession of Carol O'Connor. Two, Willie J. Watson did not have the permission or consent of Carol O'Connor, or anyone authorized to act for her, to enter the structure at that time. Three, at the time of entering the structure, Willie J. Watson had a fully-informed, conscious intent to commit the offense of assault and/or battery in that structure.

A person may be guilty of this offense if he or she entered into or remained in the areas of the premises which he or she knew or should have known were not open to the public, if he or she had the intent to commit the crime described in the charge.

Proof of the entering of a structure stealthily and without the consent of the owner can justify a finding that the entering was with the intent to commit a crime if, from all the surrounding facts and circumstances, you are convinced beyond a reasonable doubt that the intent existed.

The entry necessary need not be the whole body of the defendant. It is sufficient if the defendant extends any part of the body far enough into the structure to commit assault and/or battery.

The intent with which an act is done is an operation of the mind and therefore is not always capable of direct and positive proof. It may be established by circumstantial evidence, like any other fact in the case.

Even though an unlawful entering or remaining in a structure is proved, if the evidence does not establish that it was done with the intent to commit assault and/or battery, the defendant must be found not guilty.

(Ex. I at 9–10).

The State argued that Petitioner was prosecuted solely on a theory of unlawful entry, and the trial judge read only those three elements of the standard burglary instruction for unlawful entry, not the elements for unlawful remaining (Ex. I at 10–11) (emphasis in original). Further, the inclusion of "remaining in" language in a subsequent portion of the general burglary jury instruction was mere surplusage and not a matter of fundamental error (*id.*).

Additionally, the State argued that even if it was error to read the "remaining in" language, it was axiomatic that when two grounds for conviction are submitted to the jury, one for which there is insufficient evidence or no evidence presented, the jury's verdict of guilt cannot be reversed where there is sufficient evidence to support the other ground; the jury will consider the insufficient theory, and then dismiss it for what it is — mere surplusage, a theory insufficient to support the conviction (*id.* at 11–12). The State argued that ample evidence of an unlawful entry was presented to support the jury's verdict (*id.*).

Lastly, the State argued that the "remaining in" language was made applicable by Petitioner's own theory of defense of consensual entry, and he could not now be heard to argue that the trial court erred by reading this language from the standard jury instruction (*id.* at 12–14).

The First DCA affirmed Petitioner's conviction, thereby rejecting the argument that the "remaining in" language in the jury instruction allowed the jury to convict on a theory of burglary unsupported by the evidence. In light of the court's decision, Petitioner has failed to show a reasonable probability of a different result on appeal if appellate counsel had included the arguments Petitioner faults him for omitting.

Moreover, it is clear from the trial record that the alleged error in the burglary instruction asserted by Petitioner was not preserved for appeal. Therefore, appellate counsel's failure to argue it was not unreasonable. For these reasons, Petitioner has failed to show that the First DCA's denial of his claim was contrary to or an unreasonable application of Strickland.

K.    Claim 16:  "The petitioner Watson contend [sic] that he was denied effective assistance of appellate counsel when counsel going over the record failure [sic] to raised [sic] trial court fundamental error violation of the petitioner Watson constitutional [sic]

rights to due process of law, when the court failure [sic] to make through [sic] appropriate inquiry, certify on the record did petitioner waive his present [sic] during those bench proceeden [sic] conference."

Claim 28: "The petitioner Watson contend [sic] that he was denied effective assistance of appellant [sic] counsel when counsel failure [sic] to raise on direct appeal that trial court and trial counsel and the State prosecution denied defendant his constitutional rights to be physically present at the immediat [sic] sit [sic] sidebar conference where peremptory challenges were exercised, which resulted in denial of defendant [sic] due process right of law and that trial court failure to certify on the record that defendant made a knowingly and voluntarily [sic] waiver as dictated in the decision case law [sic] decision in Coney v. State, 653 So. 2d 1009, 1013 (Fla. 1995) . . ."

Petitioner's claims are quoted in full above. Respondent contends Petitioner failed to exhaust these claims because he failed to raise them in his state habeas petition (Doc. 40 at 75, 92). The undersigned agrees. Review of Petitioner's state habeas petition alleging ineffective assistance of appellate counsel demonstrates that Petitioner did not present these claims (which are substantively the same) (*see* Ex. W). Therefore, the claims are unexhausted. Additionally, as previously discussed, state procedural rules preclude Petitioner from returning to state court to present his claim in a second habeas petition. *See* Card, 512 So. 2d at 830–31. Moreover, Petitioner has not satisfied the "cause and prejudice" exception or the fundamental miscarriage of justice exception to the procedural bar. Therefore, he is not entitled to federal habeas review of Claims 16 and 28.

L.    Claim 17: "The petitioner Watson contend [sic] that he was denied effective assistance of appellate counsel where as [sic] counsel failure [sic] to raise on direct appeal that during trial court proceedural [sic] prosecution for the State was required [sic] to show penetration to prove crime of sexual battery by digital penetration. Fla. Stat. § 794.011(1)(h) (2004)."

Petitioner contends his appellate counsel should have argued on appeal that the trial court erred by instructing the jury that they could convict on Count II, which charged sexual battery based upon Petitioner's penetrating the victim's vagina with his fingers and/or penis, if they found that Petitioner's fingers merely had union with, as opposed to actually penetrating, the victim's vagina (Doc. 24 at 11–12). Petitioner additionally asserts appellate counsel should have argued that the trial court erred in failing to define vagina (*id.* at 11).

Respondent contends Petitioner failed to exhaust this claim in the state courts (Doc. 40 at 76–77). Respondent argues that although Petitioner claimed that appellate counsel should have raised error with regard to the trial court's failure to properly instruct the jury on digital penetration and erroneously instructing that union was an alternative to penetration, Petitioner did not raise the claim he is now raising in his federal petition (*id.*).

Assuming, without deciding, that Petitioner raised the instant claim in his state habeas petition, he is not entitled to relief. Petitioner's trial counsel raised no objection to the jury instructions on Count II (*see* Ex. B at 439). Additionally, although trial counsel preserved the issue of the sufficiency of the evidence to convict on the three counts of sexual battery, he argued only that the victim's testimony provided an insufficient evidentiary basis for the convictions (*id.* at 291–92). Counsel did not argue that union of Petitioner's finger with the victim's vagina was insufficient to satisfy the statutory definition of sexual battery. Since the issues raised in Claim 17 were not preserved for appeal, appellate counsel's failure to argue them was not unreasonable. Therefore, Petitioner is not entitled to federal relief on this claim.

M. <u>Claim 27: "The petitioner Watson contend [sic] that his appellant [sic] counsel rendered ineffective assistance of counsel when counsel failure [sic] to raise any and all fundament [sic] error submitted by trial court should have been raised on direct appeal. Appellant [sic] counsel rendered ineffective assistence [sic] of counsel when counsel failure [sic] to raise on direct appeal that the three conviction [sic] for three counts of sexual battery were barred by double jeopardy clause and counsel failure to raise on direct appeal sentencing error on the ground that the trial court error [sic] when it allowed the state prosecution score [sic] victim injury point [sic] as "moderate" rather than "slight" which subject [sic] the defendant sentence to excess [sic] the statutory maximum in which these factor [sic] was not present [sic] to a jury as stated in Blakely v. Washington, constituted [sic] ineffective assistance of appellant [sic] counsel. And appellant [sic] counsel failure to raise on direct appeal that trial court error [sic] denying defendant [sic] motion for judgment [sic] of acquittal on Count 1 and Count 2 of sexual battery when the State prosecution failure [sic] to present sufficient evident [sic] to convict defendant and appellant [sic] counsel rendered ineffective assistence [sic] of appellant [sic] counsel when he failed to raise on direct appeal trial court committed fundamental error when it faile [sic] to give jury the whole complete four essential element on crime charge [sic] offense for sexual battery."</u>

Petitioner's claim is quoted in full above. Respondent contends Petitioner's four claims of ineffective assistance of appellate counsel are conclusory and inadequate as a matter of law to raise a cognizable claim of ineffective assistance of appellate counsel, since Petitioner made no showing that a different appellate brief would have affected the outcome of the appeal (Doc. 40 at 91).

Initially, of all of the alleged errors Petitioner contends should have been raised of direct appeal only one was preserved in the trial court, that is, the sufficiency of the evidence to convict on Counts I and II (two of the sexual battery counts). Therefore, appellate counsel's failure to raise the other issues was not unreasonable. As to the sufficiency of the evidence issue, Petitioner failed to show a reasonable probability of success on appeal if appellate counsel had raised it. Under Florida law, the trial court's denial of the motion for judgment of acquittal will be affirmed if the record contains competent and substantial evidence in support of the ruling. *See* <u>Walker v. State</u>, 957 So. 2d 560, 577 (Fla. 2007) (quotation omitted). As to Counts I and II, the State presented competent and substantial evidence showing (1) the victim was 12 years of age or older, (2) Petitioner's mouth had contact or union with the victim's vagina (as charged in Count I), (3) Petitioner penetrated the victim's vagina with his fingers or penis (as charged in Count II), (4) the victim did not consent, and (5) the victim was physically incapacitated. This evidence included the victim's testimony regarding her physical disability and describing the events underlying the crimes, the victim's statements to a 911 operator and medical personnel, testimony from the victim's doctor as to her physical disability, testimonial and physical evidence that prior to the sexual acts, Petitioner hit the victim in the face with such force that she required stitches and was left with a scar (the victim also suffered other physical injuries which suggested lack of consent, including, bruising on her left cheek which extended down to her chin, and bruising and redness on her chest), and physical evidence of Petitioner's sperm in the victim's vagina. In light of this evidence, Petitioner has failed a show a reasonable probability that the First DCA would have reversed his convictions for sexual battery if appellate counsel had argued error with respect to the trial court's denial of the motion for judgment of acquittal. Therefore, Petitioner has failed to show he is entitled to relief on this claim.

N.    <u>Claim 29: "The petitioner Watson contend [sic] that he was denied effective assistance of appellante [sic] counsel where as appellant [sic] counsel failure [sic] to raised [sic] on direct appeal that trial court violated defendant Watson [sic] right of due process of law when trial court convicted defendant of a crime not charged in the charging instrument. The petitioner Watson conviction [sic] for burglary of a dwelling where he was charged by a third amended information with burglary of a structure was [sic] fundamental error."</u>

<u>Claim 31: "The petitioner Watson contend [sic] that his appellante [sic] counsel rendered ineffective assistance of appellante [sic] counsel for failure to raise a fundamental defect of the charging document and the incorrect jury instruction on direct appeal."</u>

Petitioner argues that although the Third Amended Information titled Count IV as "Burglary of Dwelling," the information substantively charged him with only burglary of a structure (*see* Doc. 24 at 25–26). He additionally argues the trial court erred in instructing the jury on this offense by (1) instructing the jury only on the essential elements of burglary of a structure, (2) intertwining burglary of a dwelling and burglary of a structure in the instructions and on the verdict form without clearly distinguishing the two, and (3) failing to instruct the jury that burglary of a structure was a lesser included offense of burglary of a dwelling (*id.*). Petitioner contends appellate counsel should have raised these issues on appeal (*id.*).

Respondent contends Petitioner failed to exhaust any aspect of this claim because he did not raise any of these arguments in his state habeas petition (Doc. 40 at 93, 95–96). Therefore, the claim is not subject to federal review.

Review of the state court record confirms Respondent's contention that Petitioner did not raise any of these issues in his state habeas petition; therefore, his claim is not exhausted (Ex. W). Additionally, state procedural rules preclude Petitioner from returning to state court to present his claim in a second habeas petition. *See* Card, 512 So. 2d at 830–31. Moreover, Petitioner has not satisfied the "cause and prejudice" exception or the fundamental miscarriage of justice exception to the procedural bar. Therefore, he is not entitled to federal habeas review of Claims 29 and 31.

O.    Claim 18:   "The petitioner Watson contend [sic] that he received ineffective assistance of trial counsel when trial counsel failure [sic] to make an objection during state witness took [sic] the witness stand and testimony [sic] taken before pretrial in camera [sic] about the victim [sic] uncorroborated hearsay statement to investigation detective Ms. E. Bascom, that the defendant penetrated her vagina with his fingers was [sic] insufficient, by itself, to establish penetration needed to support conviction for sexual battery by digital penetration."

Petitioner argues his trial counsel performed ineffectively by failing to object to the admission of the victim's statement to Detective Bascom that Petitioner penetrated her vagina with his fingers (Doc. 24 at 18). Petitioner also appears to assert that trial counsel should have argued that the evidence was insufficient to support a conviction for sexual battery by penetration, and there was no indication that the jury made a finding of penetration as opposed to mere contact (*id.*).

Respondent contends Petitioner failed to exhaust this claim because he failed to present his arguments in his first Rule 3.850 motion (Doc. 40 at 77–78). Respondent concedes that Petitioner

fairly presented a claim of ineffective assistance of counsel based upon counsel's failure to move for judgment of acquittal on the charge of sexual battery by penetration (Count II), but Petitioner did not present the precise claim he raises here (*id.*).

Upon review of the record, the undersigned concludes that Petitioner fairly presented his claim to the state courts in Grounds 7 and 12 of his Rule 3.850 motion (Ex. M at 12–13, 19–22).

1.    Clearly Established Federal Law

The clearly established standard applicable to claims of ineffective assistance of counsel is the <u>Strickland</u> standard set forth *supra*.

2.    Federal Review of State Court Decision

With regard to Petitioner's claim that trial counsel was ineffective for failing to object to Investigator Bascom's testimony regarding statements by the victim, the state circuit court denied the claim on the ground that Petitioner failed to state the grounds upon which counsel should have objected (Ex. N at 81).   Review of Petitioner's motion confirms this finding; the totality of Petitioner's argument on this issue was that Investigator Bascom testified regarding the victim's 911 call, and this testimony "should have been inadmissible, especially where testimony was based on accusatory against defendant" (Ex. M at 12–13).   In light of Petitioner's failure to state the grounds upon which counsel should have objected to Investigator Bascom's testimony, and his failure to show a reasonable probability that an objection by counsel would have been sustained by the trial court, the state court's denial of this aspect of his claim was not contrary to or an unreasonable application of <u>Strickland</u>.   Moreover, the factual basis for Petitioner's claim is refuted by the record. The trial transcript shows that Investigator Bascom did not testify regarding statements by the victim that Petitioner penetrated her with his fingers (*see* Ex. B at 426–37).   Therefore, Petitioner's claim is factually unsupported.

Regarding Petitioner's claim that counsel was ineffective for failing to move for a mistrial or judgment of acquittal on Count II, on the ground that the evidence was insufficient to show penetration, the state circuit court denied the claim on the ground that the record demonstrated that defense counsel made a motion for judgment of acquittal on the grounds that the State failed to prove the sexual battery counts (Ex. N at 84).   Indeed, the trial transcript shows that defense counsel made a motion for judgment of acquittal on the sexual battery counts relating to "any of the oral sex

and the digital penetration," on the ground that there was no physical evidence that this occurred, and the victim prevaricated as to whether it actually occurred (Ex. B at 291–92). The trial court construed the motion as applying to all three sexual battery counts and, as to the penetration count (Count II), denied it on the ground that the victim's testimony was sufficient to support the conviction (*id.* at 292). In light of this record, Petitioner has failed to establish deficient performance by counsel or that there is a reasonable probability that the trial court would have granted the motion if counsel had argued it in the manner suggested by Petitioner. Therefore, the state court's adjudication of this claim was not contrary to or an unreasonable application of Strickland.

> P.    Claim 19: "The petitioner Watson contend [sic] that trial court error [sic] by improperly assessed victim injury point for penetration, rather than sexual battery on contact, which the state prosecution scored and the trial court sentenced petitioner Watson for sexual battery on all three counts based on allegation that defendant placed 'his penis in union with vagina of victim' even if penetration did in fact occurred [sic], where trial court error [sic] where jury instruction where [sic] based on contact only alleged in the jury instruction; and where 'union with' was the only theory alleged."

Petitioner states the jury returned a general verdict convicting him as charged, and this general verdict cannot stand, pursuant to Fitzpatrick v. State, 859 So. 2d 486 (Fla. 2003), Wallis v. State, 548 So. 2d 808 (Fla. 5th DCA 1989), and Whalen v. State, 895 So. 2d 1222, 1224 (Fla. 2d DCA 2005) (Doc. 24 at 18–19).

Respondent contends that to the extent Petitioner is claiming that the verdict cannot stand, he failed to properly exhaust his claim because he did not present it on direct appeal (Doc. 40 at 79). To the extent Petitioner is claiming sentencing error in the assessment of certain sentencing points, Petitioner exhausted this claim by raising it in his amended Rule 3.800 motion; however, he alleged only a state law claim (*id.* at 79–80).

In Ground 8 of Petitioner's amended Rule 3.800 motion, Petitioner argued that the trial court illegally sentenced him to the 30-year maximum on each sexual battery count (Ex. O at 74). Petitioner asserted the prosecutor assessed points for sexual penetration, even though the jury never found that penetration, as opposed to mere union, occurred (*id.* at 74–75). Therefore, his sentences on the sexual battery counts violated the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004) (*id.* at 75).

There is no indication in the record that the state court adjudicated this claim (*see* Ex. P). Therefore, the undersigned will review Petitioner's claim of <u>Blakely</u> error de novo.

In <u>Apprendi v. New Jersey</u>, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). <u>Apprendi</u> involved a New Jersey hate-crime statute that authorized a twenty-year sentence, despite the usual ten-year maximum, if the judge found the crime to have been committed "'with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" 530 U.S. at 468–69 (quoting N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 1999–2000)). In <u>Ring v. Arizona</u>, 536 U.S. 584, 592–93, and n.1, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), the Supreme Court applied <u>Apprendi</u> to an Arizona law that authorized the death penalty if the judge found one of ten aggravating factors. In each case, the Supreme Court concluded that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding, and the challenged finding had not been made by a jury beyond a reasonable doubt. <u>Apprendi</u>, *supra*, 530 U.S. at 491–97; <u>Ring</u>, *supra*, 536 U.S. at 603–09.

In <u>Blakely v. Washington</u>, the defendant pleaded guilty to kidnaping his estranged wife. 542 U.S. 296, 303–04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months, but the judge imposed a 90-month sentence after finding that the defendant had acted with deliberate cruelty, a statutorily enumerated ground for departing from the standard range. *Id.* The Supreme Court clarified that "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts. <u>Blakely</u>, 542 U.S. at 303–04. Applying <u>Apprendi</u>, the Court invalidated Blakely's sentence because the facts supporting his exceptional sentence were neither admitted by him nor found by a jury, therefore, the sentence violated his Sixth Amendment right to trial by jury. *Id.* at 313–14.

The state court record demonstrates that the jury verdict reflects Petitioner was found guilty of three counts of "sexual battery while person physically incapacitated," as charged in the third

amended information (Exs. A, C). Section 794.011(4) of the Florida Statutes specifically provides that the crime of sexual battery when the victim is physically incapacitated is a first degree felony punishable by a maximum term of thirty (30) years of imprisonment. Fla. Stat. §§ 794.011(4), 775.082(b). Petitioner's sentence of thirty (30) years on each sexual battery count did not exceed the statutory maximum. Therefore, he has failed to demonstrate that the assessment of sentencing points for penetration violated <u>Blakely</u>.

Q. <u>Claim 20: "The petitioner Watson contend [sic] that trial court committed reversible error by failing to make a Richardson inquiry on the defendant claim [sic] of ineffective assistance of counsel."</u>

Petitioner contends the State failed to provide the defense with the victim's tape recorded statement to Investigator Bascom, and the trial court should have conducted a <u>Richardson</u>[17] inquiry prior to permitting the State to use the statement as evidence at trial (Doc. 24 at 19–20). Petitioner additionally contends the state circuit court erred by failing to conduct an evidentiary hearing on his Rule 3.850 claims that defense counsel was ineffective for failing to obtain a copy of the victim's tape recorded statement prior to trial, and failing to object to Investigator Bascom's testimony regarding the "undisclosed," "withheld," "surprise" statement (*id.*).

Respondent contends Petitioner's claim of trial court error was not properly exhausted (Doc. 40 at 81). Additionally, to the extent Petitioner raises a claim of ineffective assistance of counsel, the only claim he presented in his Rule 3.850 motion was a claim of ineffective assistance of counsel with regard to counsel's failure to obtain the victim's tape recorded statement prior to trial (as well as a claim that the State failed to disclose the existence of the tape in violation of <u>Brady v. Maryland</u>, 363 U.S. 83 (1963)) (*id.* at 81–82). Respondent argues Petitioner did not claim that counsel was ineffective for failing to request a <u>Richardson</u> hearing (*id.*). Moreover, Petitioner failed to show he was prejudiced by counsel's alleged errors (*id.* at 82).

The undersigned agrees with Respondent that Petitioner did not exhaust his claim of trial court error with respect to the court's failure to conduct a <u>Richardson</u> hearing. Therefore, that aspect of his claim is procedurally defaulted from federal review. Additionally, to the extent Petitioner

---

[17] <u>Richardson v. State</u>, 246 So. 2d 771 (1971) (State's failure to provide name of witness to defendant's counsel, State's silence as to any excuse for such failure, and trial court's failure to make inquiry to determine whether such witness existed and, if so, whether witness possessed and would furnish relevant information to defendant, was prejudicial requiring that defendant's conviction be set aside).

claims that the state circuit court failed to conduct an evidentiary on his claim of ineffective assistance of counsel, he is not entitled to relief.  It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *See* Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th  Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").  In the instant case, the state collateral proceeding where this alleged due process violation occurred was not part of the direct review process of Petitioner's conviction, rather, Petitioner's direct appeal to the First DCA in Watson v. State, 954 So. 2d 1163 (Fla. 1st DCA 2007) was the direct review proceeding. Therefore, to the extent Petitioner's claim challenges only the process afforded him in a state collateral review proceeding and does not present a constitutional challenge to Petitioner's confinement, it does not provide a basis for federal habeas relief.

To the extent Petitioner challenges the state court's denial of his claim of ineffective assistance of counsel based upon counsel's failure to obtain a copy of the victim's tape recorded statement prior to trial, and failing to object to admission of Investigator Bascom's testimony regarding the tape recorded statement on the ground that its existence had not been disclosed to the defense, Petitioner has failed to show that the state court's adjudication of the claim was unreasonable.

Petitioner raised this two-part claim in Ground 4 of his Rule 3.850 motion (Ex. M at 8–10). The state circuit court determined that Petitioner's arguments were logically inconsistent—assuming that the tape was Brady evidence (that is, suppressed by the State), counsel could not be ineffective for failing to discover it (Ex. N at 80).  The court therefore treated the claim as a Brady claim and

denied it as procedurally barred, since it should have been raised on direct appeal (*id.*). The court additionally concluded that Petitioner's claim that the victim's statement was exculpatory or impeaching was conclusory and without a factual basis (*id.*).

Initially, Petitioner has failed to show that a tape recorded statement existed. As evidence of its existence, Petitioner states Investigator Bascom testified that a tape recorded statement was made; however, Petitioner's citation to the record in support of this assertion is actually a citation to the testimony of Officer Malafronte (formerly Officer Berry) not Investigator Bascom (*see* Ex. M at 9 (citing trial transcript at page 148, lines 4–5)). Furthermore, Officer Malafronte did not testify that a tape recording of the victim's statement was made; she testified that the victim gave a statement as to what occurred, but the victim was physically unable to write her statement on the standard police form, so the victim dictated her statement to Officer Malafronte, who recorded it <u>in writing</u> on the form (Ex. B at 146–47). In the absence of any evidence that a tape recorded statement existed, Petitioner failed to show that defense counsel was deficient for failing to obtain it.[18] Additionally, Petitioner does not allege that the State suppressed the victim's written statement (dictated to Officer Malafronte), or that defense counsel failed to obtain a copy of it prior to trial. Moreover, the trial transcript confirms that defense counsel made several hearsay objections to Officer Malafronte's testimony regarding the victim's description of the sexual batteries (Ex. B at 133–57). Therefore, Petitioner has failed to show that the state court's denial of his ineffective assistance of counsel claim was unreasonable.

R. Claim 21: <u>"The petitioner Watson contend [sic] that he presented a sufficient claim for a Rule 3.850 post [sic] conviction motion relief [sic] to trial court of counsel [sic] rendered ineffective assistance of counsel when counsel failure [sic] to take pretrial deposition from Tallahassee police investigation detective officer Ms. E. Bascom prior before [sic] trial."</u>

Petitioner alleges defense counsel should have deposed Investigator Bascom to obtain impeachment evidence (Doc. 24 at 20–21). He also repeats two arguments asserted in his previous claim: (1) counsel should have obtained "the undisclosed oral taped testimony," and (2) the trial

---

[18] The trial transcript shows that a tape recording of the victim's call to 911 existed. To the extent Petitioner is claiming ineffective assistance based upon defense counsel's alleged failure to obtain a copy of the 911 call, his claim is directly refuted by the record. The trial transcript demonstrates that defense counsel presented testimony from the 911 operator and admitted the tape recording as evidence (Ex. B at 314–22).

court should have conducted a <u>Richardson</u> hearing (*id.* at 21). Since those arguments were addressed *supra*, the undersigned will not address them here.

Respondent concedes Petitioner exhausted the claim concerning counsel's failure to depose Investigator Bascom (Doc. 40 at 83). Respondent contends Petitioner has failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of <u>Strickland</u>.

> 1.    Clearly Established Federal Law

The clearly established standard applicable to claims of ineffective assistance of counsel is the <u>Strickland</u> standard set forth *supra*.

> 2.    Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of counsel as Ground 7 in his Rule 3.850 motion (Ex. M at 12–13). He argued that if counsel had deposed Investigator Bascom, he could have impeached her trial testimony that Petitioner was intoxicated at the time she interviewed him (*id.*). He also asserted that Bascom's testimony that she smelled alcohol on Petitioner's breath conflicted with testimony of Officer Paul Osborn that Petitioner was not intoxicated nor smelled of alcohol (*id.* at 13).

As previously mentioned, the state circuit court cited the <u>Strickland</u> standard as the controlling legal standard applicable to Petitioner's claim (Ex. N at 79). The state circuit court found as fact that Bascom and Osborn did not give conflicting testimony regarding Petitioner's intoxication; both witnesses testified that they routinely confirm whether a suspect is too intoxicated to be meaningfully interviewed, but Petitioner had no trouble interviewing (*id.* at 81). Therefore, the court denied the claim on the ground that it lacked a factual basis (*id.* at 81–82).

The state court's finding that Officer Osborn and Investigator Bascom did not give conflicting testimony as to Petitioner's intoxication is supported by the record. Officer Osborn testified that before he interviews a suspect, he determines whether the suspect is intoxicated (Ex. B at 420–21). He testified that if the suspect is intoxicated to the point that the suspect cannot engage in a lucid conversation, he would not interview the suspect, because the suspect would not understand the <u>Miranda</u> advisory or the significance of his or her statements (*id.*). Osborn testified that when he spoke to Petitioner on the night of the offenses, Petitioner "carried on a very, very lucid conversation" and did not appear to have any problem understanding or answering questions (*id.*).

Investigator Bascom testified that that before she interviews a suspect, she determines whether a suspect is intoxicated to the point that he or she cannot fully understand his or her rights or Bascom's questions (*id.* at 430–31). Bascom testified that when she spoke to Petitioner, she smelled alcohol on his breath, and Petitioner told her he had been drinking, but his speech was not slurred, he answered all of her questions smoothly and easily, and he appeared to understand her questions (*id.* at 431). Petitioner has failed to show that counsel's deposing Investigator Bascom would have produced any impeaching information, or that there is a reasonable probability that any such information would have affected the outcome of trial. Therefore, he has failed to demonstrate that the state court's denial of this claim was contrary to or an unreasonable application of Strickland.

S.    Claim 22: "The petitioner Watson contend [sic] that trial court departed from the essential requirement of law in this case, and procedurally prejudice [sic] the petitioner Watson case [sic] and deprivated [sic] the petitioner Watson of due process of law and a fair trial by jury."

Petitioner contends the trial court violated Rule 3.400(a) by permitting the jury to take personal notes into the jury room during deliberations (Doc. 24 at 22).

Respondent contends that although Petitioner exhausted a claim of trial court error with respect to the court's sending all of the evidence to the jury room during deliberations, Petitioner did not exhaust this instant claim of trial court error with respect to the court's permitting jurors to take their personal notes to the jury room (Doc. 40 at 85).

The state court record confirms Respondent's exhaustion argument. In Ground 13 of Petitioner's Rule 3.850 motion, he asserted the trial court abused its discretion by sending all of the evidence to the jury room without first allowing the jury to request it (Ex. M at 22–23) (emphasis added). Petitioner argued that this deprived him of his fundamental right to a fair trial because it exposed the jury to "extraneous evidence" and permitted them to reach a verdict based upon an emotional response instead of logical analysis of the evidence (*id.*). Petitioner did not assert trial court error with respect to the trial court's permitting the jurors to have their personal notes during deliberations (*id.*). Since Petitioner now asserts a different factual basis for his claim, the undersigned concludes that the claim is not exhausted.

Moreover, assuming arguendo that Petitioner's reference to "extraneous evidence" constituted fair presentation of his claim, Petitioner is not still not entitled to federal review of his

claim. The state court denied Petitioner's claim as procedurally barred, because the claim of trial court error should have and could have been raised on direct appeal (Ex. N at 84). This procedural rule is firmly established and regularly followed by Florida courts. *See* State v. Coney, 845 So. 2d 120, 137 n.17 (Fla. 2003); Johnston v. State, 841 So. 2d 349, 357 n.9 (Fla. 2002). Petitioner has failed to show cause for his failure to present his claim on direct appeal, or that he is entitled to review through any other exception to the procedural bar. Therefore, federal review of his claim is unavailable.

  T. Claim 23: "The petitioner Watson contend [sic] that trial court departed from the essential requirement of law in this case when trial judge violated Fla. R. of Crim. P. Rule 3.400(a)(2) when trial judge did not let defense counsel review of [sic] the forms of verdict approved by the court and the verdict form was never first submitted to defense counsel for his approve [sic]."

  Petitioner's claim is quoted in full above. Respondent contends Petitioner failed to exhaust this claim; therefore, it is procedurally barred from federal review.

  Review of the state court record confirms that Petitioner did not fairly present this claim of trial court error to the state courts. Petitioner cannot properly return to state court to present his claim, since a second direct appeal is not available, and another Rule 3.850 motion would be subject to dismissal as successive under Rule 3.850(f). Furthermore, Petitioner has failed to establish he is entitled to review of his claims under the "cause and prejudice" or fundamental miscarriage of justice exception to the procedural bar. Therefore, the claim is barred from federal habeas review. Moreover, Petitioner's claim is refuted by the record. The trial transcript reflects that the trial court and counsel for both parties discussed at length the jury instructions and the verdict form (*see* Ex. B at 330–47, 437–39). Additionally, the trial court read the verdict form during its instructions to the jury, which provided defense counsel an opportunity to object (*id.* at 465–67). Therefore, Petitioner's claim of trial court error is without merit.

  U. Claim 24: "The petitioner Watson contend [sic] that trial court departed from the essential requirement of law in this case and denied petitioner due process of law when the petitioner Watson informed the trial court which judgment and sentence which [sic] the defendant was tried that the court was without jurisdiction of the cause, and the court erroneously instructed the jury on a matter of law and the verdict is contrary to law or the weight of the evidence."

Claim 25: "The petitioner Watson contend [sic] that trial court departed from the essential requirement of law in this case which results in a complete miscarriage of justice and such a denial infringement [sic] upon the defendant Watson constitutional right of the State of Florida due process [sic] and as well as under the United States constitutional right [sic] when trial court failure [sic] to vacate, set aside, or correction [sic] of sentence provided that the sentence is unconstitutional in violation of law of the Florida Constitution and well [sic] as unconstitutional in violation of law of the Unite [sic] States, and that the court lack jurisdiction to impose sentence, and the sentence exceeds the maximum penalty authority by law and the sentence is subject to collateral attack."

Petitioner's claims are quoted in full above. Respondent states he is unable to discern the basis of Petitioner's federal constitutional claims; therefore, the claims should be dismissed as vague, conclusory, devoid of sufficient factual substantiation, and insufficiently pled (Doc. 40 at 87–88). Respondent is correct. Petitioner's allegations of lack of jurisdiction, erroneous jury instructions, an illegal verdict, and an illegal sentence are conclusory and devoid of specific legal grounds or factual support. In light of Petitioner's failure to allege specific legal grounds for his claims and specific facts to sustain each ground, his vague, conclusory allegations provide no basis for habeas relief. *See* Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (noting that habeas relief is not warranted when claims are merely conclusory allegations unsupported by specifics); *see also* United States v. Yizar, 956 F.2d 230, 234 (11th Cir. 1992) (stating that a petitioner must set forth sufficient allegations to demonstrate that he is entitled to his requested relief); United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980) (conclusory allegations of prosecutorial misconduct are not actionable in habeas corpus).

V.     Claim 26: "The petitioner Watson contend [sic] that trial court had departed from the essential requirement of law in this case which results in a complete miscarriage of justice when trial court denied petitioner [sic] Rule 3.850 postconviction motion for relief entitled [sic] petitioner to an evidentiary hearing on the grounds of ineffective assistance of counsel failure [sic] to request jury instruction on circumstantial evident [sic] which the state prosecution solely reply [sic] upon to convicte [sic] the petitioner Watson."

Petitioner contends the State's evidence was purely circumstantial as to the burglary and felony battery counts, and defense counsel was ineffective for failing to request a jury instruction on circumstantial evidence (Doc. 24 at 23).

Respondent concedes that Petitioner exhausted this claim by raising it in his amended second Rule 3.850 motion (Doc. 40 at 89). Respondent contends the state court denied the claim based

upon an independent and adequate state procedural rule; therefore Petitioner's claim is procedurally barred from federal review (*id.* at 89–90).

The state court record confirms that Petitioner raised this claim of ineffective assistance of counsel in Grounds 12 and 13 of his amended second Rule 3.850 motion (*see* Ex. KK at 110–12). The state circuit court denied the motion based upon an independent and adequate state procedural rule, namely, Rule 3.850(f) (*see* Ex. LL). Furthermore, Petitioner has failed to establish he is entitled to review of his claim under the "cause and prejudice" or fundamental miscarriage of justice exception to the procedural bar. Therefore, the claim is barred from federal review.

> W.   Claim 30: "The petitioner Watson contend [sic] that his trial counsel rendered ineffective assistance of counsel when counsel failure [sic] to object to the technical deficiencies in the charging instrument; when a discrepancy exists between the offense designated in the information heading and the crime depicted in the body of the instrument, the offense described in the body is the one with which the defendant is charged. Even thus, trial court interweeded [sic] both burglary of a dwelling and burglary of a structure into it [sic] jury instruction. Jury should have been told that burglary of a structure is a necessarily lesser included offense of burglary of a dwelling."

Petitioner's claims are quoted in full above. Respondent contends Petitioner did not present this claim to the state courts; therefore, it is unexhausted and barred from federal review (Doc. 40 at 94–95).

Review of the state court record confirms that Petitioner did not fairly present this claim of ineffective assistance of counsel to the state courts. Petitioner cannot properly return to state court to present his claim, since another Rule 3.850 motion would be subject to dismissal as successive under Rule 3.850(f). Furthermore, Petitioner has failed to establish he is entitled to review of his claims under the "cause and prejudice" fundamental miscarriage of justice exception to the procedural bar. Therefore, the claim is barred from federal habeas review.

Moreover, Petitioner failed to demonstrate that counsel had a meritorious basis for objecting to the charging document as to the burglary charge, or objecting to the burglary instruction on the ground that it failed to include the lesser included offense of burglary of a structure. The Third Amended Information listed "Burglary of Dwelling with Person Assaulted" as Count IV (Ex. A). Count IV charged Petitioner as follows:

> On or about April 6, 2005 or April 7, 2005 did unlawfully enter or remain in a structure located at 1509 Branch St. #7 Tallahassee, FL, the <u>dwelling</u> of Carol O'Connor,

> with intent to commit the offense of assault/or battery or some offense therein, and in the course of committing the offense did make an assault or a battery upon a person, Carol O'Connor, contrary to Section 810.02(2)(a), Florida Statutes.

(Ex. A) (emphasis added). This demonstrates that there was no discrepancy between the crime stated in the heading and the crime charged in the body of the charging document. Additionally, review of the jury instructions and the verdict form demonstrates that the jury was instructed on the essential elements of burglary of a structure, and that an "aggravating factor" existed if the structure was a dwelling (Ex. B at 452–56, Ex. C). Therefore, counsel was not deficient by failing to raise these issues at trial.

> X.      Claim 32: "The petitioner Watson contend [sic] that the trial court departed from the essential requirement [sic] in this case when trial court error [sic] improperly denied petitioner Watson Rule 3.850 postconviction motion for relief warranted [sic] an evidentiary hearing when the petitioner Watson contention [sic] that his trial counsel was ineffective assistance [sic] of counsel for failure to timely object to the improper burglary jury instruction, which allowed conviction if defendant entered victim [sic] premises without consent or remained in the premise [sic] after consent was withdrawn."

> Claim 33:  "The petitioner Watson contend [sic] that his trial counsel rendered ineffective assistance of trial counsel when counsel failure [sic] to timely object to the omission of "surreptitiously" to modify "remaining in" in the jury instruction for burglary."

Petitioner contends that at the time of his trial, the phrase "remaining in" in the jury instructions on burglary was required to be modified by the term "surreptitiously" (Doc. 24 at 26–27). However, the jury instructions did not instruct the jury that in order to convict him of "remaining in," they must find that he did so surreptitiously, and defense counsel failed to object to the omission of the word "surreptitiously" from the burglary instruction (*id.* at 27–28). Petitioner contends he was prejudiced by counsel's error because the jury returned a general verdict convicting him on either an "entering" or "remaining in" theory; therefore, he may have been convicted on the "remaining in" theory, which was an inadequate basis for conviction because of the omission of the "surreptitiously" element from the jury instructions (*id.*). Petitioner additionally argues, "Evidence of a crime committed inside the dwelling of another cannot, in and of itself, establish the crime of burglary; the State cannot use the criminal act to prove both intent and revocation of the consent to enter." (*id.*).

Respondent contends Petitioner failed to fairly present these claims of ineffective assistance of counsel to the state courts (Doc. 40 at 96–99). Therefore the claims are unexhausted and procedurally barred from federal review (*id.*).

Review of the state court record confirms that Petitioner did not fairly present his claims of ineffective assistance of counsel to the state courts. Petitioner cannot properly return to state court to present his claims, since another Rule 3.850 motion would be subject to dismissal as successive under Rule 3.850(f). Furthermore, Petitioner has failed to establish cause for his failure to raise his claims in the state courts. Moreover, he has failed to show he is entitled to review pursuant to the fundamental miscarriage of justice exception to the procedural bar, since he has not presented new reliable evidence of his actual innocence and shown that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Therefore, the claims are barred from federal habeas review. Moreover, to the extent Petitioner claims error with respect to the state circuit court's failure to conduct an evidentiary hearing on his claims of ineffective assistance of counsel, he is not entitled to relief. *See* Quince, 360 F.3d at 1261–62; Spradley, 825 F.2d at 1568.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.  That the second amended petition for writ of habeas corpus (Doc. 24) be **DENIED**.

2.  That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this $\underline{15^{th}}$ day of March 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**